Daniel E. Birkhaeuser  (SBN: 136646)
Jennifer S. Rosenberg  (SBN: 121023)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
dbirkhaeuser@bramsonplutzik.com

David Boies
Timothy Battin
Christopher Le
STRAUS & BOIES, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone:     (703) 764-8700
Facsimile:      (703) 764-8704

Eric J. Pickar
BANGS, McCULLEN, BUTLER, FOYE & SIMMONS, LLP
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone:     (605) 343-1040

ORIGINAL
F I L E D

MAR 1 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donna Ellingson, individually and on behalf of all others similarly situated;<br><br>v.<br><br>Chunghwa Picture Tubes Ltd., Tatung Company, Tatung of America, Inc., LG Electronics, Inc., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, LP Displays (f/k/a LG Philips Displays), Matsushita Electric Industrial Co. Ltd., Panasonic Corporation of America, MT Picture Display Company, Toshiba Corporation, Toshiba American Information Systems, Inc., Toshiba America Electronic Components, Inc., Hitachi Ltd., Hitachi America Ltd., Hitachi Electronic Devices (USA), Inc., Samsung Electronics Co. Ltd., Samsung SDI Co. Ltd., Samsung SDI America, Inc., John Does 1-100. | ) CASE NO. 08-01364 MEJ<br>)<br>)<br>)<br>)<br>) CLASS ACTION COMPLAINT  ADR<br>)<br>)<br>) DEMAND FOR JURY TRIAL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COPY

1   Plaintiff, Donna Ellingson, individually and on behalf of all other similarly-situated

2   indirect purchaser consumers, brings this complaint against all Defendants named herein, and

3   demands a trial by jury for all claims. Plaintiff alleges on information and belief as follows:

4   **Introduction**

5   1.   This case arises out of a long-running conspiracy extending from at least May

6   1, 1998 through December 1, 2007 (the "Class Period"), among Defendants and their co-

7   conspirators, with the purpose and effect of fixing, raising, and maintaining prices for CRT

8   Products (as defined herein) sold indirectly to Plaintiff and other indirect purchasers

9   throughout the United States, including in South Dakota, California, Arizona, the District of

10   Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana,

11   Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico,

12   Tennessee, Vermont, West Virginia and Wisconsin (the "Indirect Purchaser States").

13   2.   Defendants and their co-conspirators have formed an international cartel to

14   illegally restrict competition in the CRT Product market, targeting and severely burdening

15   consumers throughout the United States, including the Indirect Purchaser States.  During the

16   Class Period, the conspiracy affected billions of dollars of commerce for CRT Products

17   including but not limited to, computer monitors and television sets.

18   3.   During the Class Period, Defendants conspired via communications and

19   meetings in which Defendants agreed to eliminate competition and fix the prices of CRT

20   Products.  As a proximate result of Defendants' price fixing conspiracy, Plaintiff has been

21   injured in her business and property by paying more for CRT Products than she otherwise

22   would have paid in the absence of Defendants' conspiracy.

23   4.   Plaintiff brings this action seeking federal injunctive relief under Section 16 of

24   the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1,

25   and to recover damages under state antitrust, consumer protection, unfair trade, and/or

26   deceptive trade practices laws, common law principles of restitution, disgorgement, and

27   unjust enrichment, as well as to recover the costs of suit, including reasonable attorneys fees,

28   -2-

1  for the injuries that Plaintiff and all others similarly situated sustained as a result of

2  Defendants' conspiracy to fix, raise, maintain and/or stabilize the prices of CRT Products.

3  **JURISDICTION AND VENUE**

4      5.    This is an action brought under Section 16 of the Clayton Antitrust Act (15

5  U.S.C. 26) to secure equitable relief against Defendants due to their violations of Section 1 of

6  the Sherman Antitrust Act (15 U.S.C. 1), as well as under the laws the Indirect Purchaser

7  States to obtain restitution, recover damages, and to secure other relief against Defendants for

8  violations of those laws.  All of Defendants named herein are or were manufacturers of CRT

9  Products during the Class Period.

10      6.    This Court has subject matter jurisdiction of the federal antitrust claims

11  asserted in this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. 26) and Title

12  28 U.S.C. §§ 1331 and 1337, and Section 1 of the Sherman Act (15 U.S.C. 1).  The Court has

13  jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are

14  so related to the federal claim that they form part of the same case or controversy.  The Court

15  also has jurisdiction over the state claims under 28 U.S.C. § 1332(d) because the amount in

16  controversy exceeds $5,000,000, and there are members of the classes who are citizens of a

17  state different from the Defendants.

18      7.    Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. §

19  1391, because one or more of Defendants reside, is licensed to do business, is found, or

20  transacts business in this District, and a substantial part of the events or omissions giving rise

21  to Plaintiff's claims arose in this District.

22      8.    Defendants conduct business throughout the United States, including in this

23  jurisdiction, and they have purposefully availed themselves of the laws of the United States,

24  including the Indirect Purchaser States.  Defendants' products are sold in the flow of interstate

25  commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable

26  effect on such commerce.

27      9.    Defendants' conspiracy to fix the price of CRT Products substantially affected

28  commerce in each of the Indirect Purchaser States because Defendants, directly or through

their agents, engaged in activities affecting those states.  Defendants have purposefully

availed themselves of the laws of each of the Indirect Purchaser States in connection with

their activities relating to the production, marketing, distribution and/or sale of CRT Products.

Defendants produced, promoted, sold, marketed, and/or distributed CRT Products, thereby

purposefully profiting from access to the consumer markets of each Indirect Purchaser State.

Defendants also contracted to supply or obtain goods or revenue related to the business for

CRT Products.  As a result of the activities described herein, Defendants:

(a)    Caused tortious damage to the residents of the Indirect Purchaser
States;

(b)    Caused tortious damage in each of the Indirect Purchaser States by acts
or omissions committed outside those states and/or by regularly doing
or soliciting business in those states;

(c)    Engaged in persistent courses of conduct within the Indirect Purchaser
States and/or derived substantial revenue from the marketing of CRT
Products in those states (and services relating to such marketing); and

(d)    Committed acts or omissions that they knew or should have known
would cause damage (and did, in fact, cause such damage) in the
Indirect Purchaser States  while regularly doing or soliciting business,
engaging in other persistent courses of conduct,  and/or deriving
substantial revenue from the marketing of CRT Products (and services
relating to them) in those states.

10.    Defendants knew that their conspiracy would adversely affect commerce in

each of the Indirect Purchaser States, but implemented their conspiracy anyway.  As a result,

Defendants' conspiracy has had adverse monetary effect on indirect-purchasers in the Indirect

Purchaser States and a substantial effect on interstate commerce in the United States.

## DEFINITIONS

11.    As used herein, the term "Class Period" refers to the time period beginning

May 1, 1998 and continuing through December 1, 2007.

12.    As used herein, the term "CRT" means cathode ray tube.

13.    As used herein, the phrase "CRT Products" includes CRTs and products

containing CRT displays including but not limited to certain types of televisions and computer

monitors.

14. As used herein, the term "OEM" means any original equipment manufacturer.

## PARTIES

**Plaintiff**

15. Plaintiff, Donna Ellingson, is a South Dakota resident. During the Class Period, Plaintiff purchased a CRT Product indirectly from one or more of the Defendants and was injured as a result of Defendants' illegal conduct.

16. Plaintiff and the members of the Indirect-Purchaser Class were injured in their businesses or property as a result of defendants' illegal price-fixing agreement because they paid more for CRT Products than they would have absent such illegal conduct.

**Defendants**

### Tatung

17. Tatung Company is a Taiwanese corporation with headquarters located at 22, Sec. 3, Chung-Shan N. Rd., Taipei City 104, Taiwan. During the Class Period, Tatung Company individually and through its subsidiaries manufactured, marketed, sold, and/or distributed CRT Products throughout the United States.

18. Tatung Company owns Tatung of America, Inc., which is a California corporation with its principal place of business at 2850 El Presidio St. Long Beach, California. During the Class Period, Tatung of America, Inc. manufactured, marketed, sold, and/or distributed CRT Products throughout the United States.

19. Defendants Tatung Company owns Tatung of America, Inc., are hereinafter collectively referred to as "Tatung."

### Chunghwa

20. Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a Taiwanese corporation with it principal place of business at 1127, Heping Rd., Bade City, Taoyuan, Taiwan. During the Class Period, Chunghwa manufactured, marketed, sold, and/or

//

21.     distributed CRT Products throughout the United States.  Chunghwa is a partially owned subsidiary of Tatung.

**LG**

22.     Defendant LG Electronics, Inc. ("LG") is a Korean corporation with its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, 150-721, South Korea.  LG's United States headquarters are located at 1000 Sylvan Avenue, Englewood Cliffs, NJ 07632. During the Class Period, LG individually and through its subsidiaries manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

**Phillips**

23.     Defendant Koninklijke Philips Electronics N.V. is a Dutch corporation with its principal place of business at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The Netherlands.  During the Class Period, Koninklijke Philips Electronics N.V.  individually and through its subsidiaries manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

24.     Defendant Philips Electronics North America Corporation is a subsidiary of Koninklijke Philips Electronics N.V., which is headquartered at 1251 Avenue of the Americas, New York, New York 10020.  During the Class Period, Philips Electronics North America Corporation manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

25.     Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation are hereinafter collectively referred to as "Philips."

**LP Displays**

26.     LP Displays (f/k/a LG Philips Displays) is a joint venture between LG and Phillips and has its principal place of business at 308 Des Voeux Road Central, 6th Floor, ING

Tower, Sheung Wan, Hong Kong. During the Class Period, LP Displays manufactured, sold, and/or distributed CRT Products throughout the United States.

**Matsushita**

27. Defendant Matsushita Electric Industrial Co. Ltd. is a Japanese corporation with its principal place of business at 1006 Oaza Kadoma, Osaka 571-8501, Japan. During the Class Period, Matsushita individually and through its subsidiaries manufactured, marketed, distributed, and/or sold CRT Products throughout the United States.

28. Defendant Panasonic Corporation of America ("Panasonic") is a wholly owned subsidiary of Matsushita Electric Industrial Co., Ltd. and has its principal place of business at 1 Panasonic Way, Secaucus, New Jersey 07094. During the Class Period, Panasonic manufactured, marketed, sold, and/or distributed CRT Products throughout the United States.

29. Defendant MT Picture Display Company ("MT Picture") f/k/a Toshiba Picture Display Company Ltd., is a wholly owned and controlled subsidiary of Matsushita Electric Industrial Co. Ltd with its principal place of business at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo, 108-0075, Japan. MT Picture was a former joint venture between Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation. During the Class Period, MT Picture manufactured, marketed, sold, and/or distributed CRT Products throughout the United States.

30. Defendants Matsushita Electric Industrial Co., Ltd., MT Picture Display Company, and Panasonic Corporation of America are hereinafter collectively referred to as "Matsushita."

**Toshiba**

31. Defendant Toshiba Corporation is a Japanese corporation with its principal place of business at 1-1, Shibaura 1-Chome, Minato-ku, Tokyo 1-5-8001, Japan. During the

Class Period, Toshiba Corporation individually and through its subsidiaries manufactured, sold and/or distributed CRT Products throughout the United States.

32.    Defendant Toshiba American Information Systems, Inc. is a subsidiary of Toshiba America Inc., which is a holding company for Defendant Toshiba Corporation. Toshiba American Information Systems, Inc. has its principal place of business at 9470 Irvine Blvd., Irvine, California.  During the Class Period, American Information Systems, Inc. manufactured, sold and/or distributed CRT Products throughout the United States.

33.    Defendant Toshiba America Electronic Components, Inc. is a wholly owned and controlled subsidiary of defendant Toshiba Corporation with corporate headquarters at 19900 Macarthur Blvd., Ste. 400, Irvine, CA 92612.  During the Class Period, Toshiba America Electronic Components, Inc. manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

34.    Defendants Toshiba Corporation, American Information Systems, Inc., and Toshiba America Electronic Components, Inc. are hereinafter collective referred to as "Toshiba."

**Hitachi**

35.    Defendant Hitachi Ltd. is a Japanese corporation with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan. During the Class Period, Hitachi Ltd. individually and through its subsidiaries manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

36.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd., with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005.  During the Class Period, Hitachi America Ltd. manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

37. Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd., with its principal place of business at 1000 Hurricane Shoals Rd., Suite D-100, Laurenceville, Georgia 30043. During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

38. Defendants Hitachi Ltd., Hitachi America Ltd., and Hitachi Electronic Devices (USA), Inc. are hereinafter collectively referred to as "Hitachi."

**Samsung**

39. Defendant Samsung Electronics Co., Ltd. is a Korean corporation with its principal place of business at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Republic of Korea. During the Class Period, Samsung Electronics Co., Ltd. individually and through its subsidiaries manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

40. Defendant Samsung SDI Co., Ltd. is a subsidiary of Samsung Electronics Co. Ltd. and has its global headquarters at Samsung Life Insurance Bldg.150, Taepyungno 2-ga, Jung-gu, Seoul, South Korea. During the Class Period, Samsung SDI Co., Ltd. individually and through its subsidiaries manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

41. Defendant Samsung SDI America, Inc. is a subsidiary of Samsung SDI Co., Ltd. and has its principal place of business at 333 Michelson Drive, Suite 700, Irvine, California 92612. During the Class Period, Samsung SDI America, Inc. manufactured, marketed, sold and/or distributed CRT Products throughout the United States.

42. Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., and Samsung SDI America, Inc. are hereinafter collectively referred to as "Samsung."

//

**CO-CONSPIRATORS**

43.     Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as Co-Conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

44.     The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants named herein as John Does 1 through 100 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of John Does 1 through 100 when they become known.  Each of John Does 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

45.     The acts charged in this Complaint as having been done by Defendants and the Doe Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

**FACTUAL ALLEGATIONS**

**A.     CRT Technology and Products**

46.     CRT technology has existed for over 100 years, and the first commercially practical CRT television was developed in 1931.  CRTs generate an image by shooting a beam of electrons through a large glass vacuum tube at a fluorescent screen positioned at the front.  As the beam of electrons passes through the glass tube, the electrons are magnetically directed by deflecting coils.  Finally, the directed electrons strike the phosphorescent surface and cause the screen to light up.



Source: Wikipedia.com, see http://en.wikipedia.org/wiki/Cathode_ray_tube

47.     CRTs are manufactured in many different sizes, including but not limited to 15 inch, 17 inch, 19 inch, 27 inch and 32 inch displays. The CRTs that Defendants manufactured during the Class Period were fungible and thus bought and sold as commodities.

48.     CRTs are used predominantly in computer monitors and television sets, but are also found in other devices, including but not limited to automated teller machines, video game machines, oscilloscopes, and radar displays.

**B.     The Size and Nature of the CRT Market.**

49.     During the Class Period, the national and worldwide market for CRTs and CRT Products was immense.  Almost every household in the U.S. had at least one CRT Product at some point during the Class Period.  In 1998, the CRT market was near its peak and was composed of approximately 264 million units valued at $23 billion.

50.     The demand for CRT Products has rapidly declined, however, due to the emergence of flat panel display ("FPD") technology.  Flat displays such as liquid crystal displays ("LCDs") and plasma displays provide comparable picture quality but take up much less physical space.

51.     In 2007, the global CRT market was valued at approximately $4.43 billion, with approximately 112 million units sold in 2006.  The trend is expected to continue and it is predicted that by 2010 CRT unit sales will drop to 69 million units.

52.     Despite the fact that CRTs' share of the display market was shrinking during the class period, CRTs remained a viable alternative to FPD products. CRTs can provide a higher resolution on a smaller screen than their FPD competitors.

53.     The market for CRTs is tied directly to the market for CRT Products. CRTs serve as a component for CRT Products, and have almost no independent utility outside of their final form as a CRT Product – namely a television or monitor display. Consequently, the demand for CRTs operates as a direct function of the demand for CRT Products.

54.     Currently, CRT televisions account for approximately 37% of the television revenues in North America. In 2006, CRT TVs accounted for 76% of the worldwide TV units sold. In the desktop monitor realm, FPDs did not overtake CRTs' market share until the 3rd quarter of 2004 when FPDs took a 50% to 49% lead. In 2005, approximately 47 million CRT computer monitors were sold worldwide with 9.5 million sold in the U.S.

55.     The declining CRT market has had two major effects: 1) there was a strong disincentive for any new competitors to enter the market, and 2) a strong incentive was created for existing manufacturers to collude to stabilize CRT prices.

56.     The market for the manufacture and sale of CRTs is conducive to the type of collusive activity alleged herein. The CRT market has high barriers to entry due to high manufacturing costs, resulting in a limited number of major CRT makers.

57.     Throughout the Class Period, Defendants collectively controlled a dominant share of the market for CRTs, both globally and in the United States. Specifically, in 2004, Defendants Samsung, LP Displays, Chunghwa Picture Tubes, and MT Picture Display, accounted for approximately 78% of the global CRT market. The oligopolistic nature of the CRT market allowed Defendants to easily coordinate their prices and pricing movements.

**C.     Joint Ventures and Consolidation of the Market.**

58.     During the Class Period, the CRT industry underwent significant consolidation as competing manufacturers entered into joint ventures with one another. Defendants regularly partnered with competitors both within and outside of the CRT industry.

59.     In 2001, LG Electronics and Phillips formed the joint venture of LP Displays. LP Displays started as a 50/50 joint venture but eventually became an independent company after becoming insolvent in March of 2007.  LP Displays had over $2 billion in annual sales for 2006.

60.     In 2003, Toshiba and Matsushita created the joint venture of Matsushita-Toshiba Picture Display Co., Ltd (a/k/a MT Picture Display).  The joint venture combined the two companies' research and development units as well as manufacturing and sales divisions. In 2007, MT Picture became a wholly owned subsidiary of Matsushita.

61.     In 2005, Samsung SDI and LP Displays entered into an agreement to share CRT parts in order to boost their CRT Production efficiency.

62.     These cross-licensing and cross-purchasing agreements provided opportunities for collusion and coordination among members, as well as a means of checking, agreeing on, and controlling prices and output.

**D.      Meetings Among the CRT Manufacturers and Additional Opportunities to Collude.**

63.     Defendants regularly met through their memberships in various trade organizations within the display industry.  Through their participation in these trade organizations, Defendants had regular opportunities to exchange information with competitors.  Specifically, Defendants Chunghwa, Hitachi and Samsung are all members of the Society for Information Display. Defendants Samsung and LG are both founders of the Korea Display Industry Association. Defendants LG, LP Displays, and Samsung are members of the Electronic Display Industrial Research Association.

64.     News reports have confirmed that several Defendants conducted meetings to set CRT sales prices.  The Asahi Asian Shimbun, an Asian news network, reported that "representatives [from MT Picture Display, Samsung SDI, Chunghwa Picture Tubes, and LP Display] held meetings in Southeast Asia where the companies operate CRT factories" in order to "set target sales prices to [CRT] TV makers to keep prices from falling."

//

1  **E.  Abnormal Price Activity in the Declining CRT Market.**

2      65.  During the class period when demand for CRT Products was plummeting,

3  Defendants' market response was not that of a competitive market free of collusion. Instead

4  of reducing prices in order to sell the CRTs being manufactured, prices remained relatively

5  stable. Defendants' market behavior strongly evidences a collusive agreement between

6  Defendants that had the purpose and effect of unnaturally stabilizing and raising prices for

7  CRT Products.

8      66.  For example, despite the fact that there was an over supply of 17-inch CRT

9  monitors in 1999, the prices for those monitors rose in early 2000. One industry analyst

10  described the price movement as being "unlike most other PC-related products."

11  **F.  Current International Investigations into CRT Price Fixing**

12      67.  On November 8, 2007, international competition authorities in Japan, Europe,

13  and South Korea executed coordinated raids on various CRT manufacturers. The Japanese

14  Federal Trade Commission ("JFTC") raided Matsushita's subsidiary MT Picture Display Co.

15      68.  The European Commission ("EC") raided several unnamed CRT

16  manufacturers. On November 21, 2007, however, Phillips admitted in a press release that

17  they were one of the CRT manufacturers under investigation. The EC stated that it had

18  "reason to believe that the companies concerned may have violated EC Treaty rules on cartels

19  and restrictive business practices." South Korea's FTC commenced an investigation of

20  Samsung SDI Co. Ltd., and Chunghwa received a summons from the United States

21  Department of Justice relating to its involvement with CRT price fixing.

22      69.  Defendants have a history of colluding within their manufacturing industries.

23  As a result, Defendants have been fined by various countries for antitrust violations and are

24  currently under investigation for price fixing in numerous industries, including the following:

25  Dynamic Random Access Memory, Synchronous Random Access Memory, NAND Flash

26  Memory, and Liquid Crystal Displays.

27  //

28  //

70.   In 2005, Samsung was fined $300 million by the United Stated Department of Justice for conspiring to fix the prices for DRAM, and one of Samsung's executives ended up being sentenced to 14 months in prison.

## VIOLATIONS ALLEGED

71.   During the Class Period, Defendants and their co-conspirators have agreed, combined, and conspired to artificially raise the prices at which CRT Products have been sold in the United States to artificial levels.

72.   Since at least 1998, the exact date being unknown to Plaintiff, the CRT market has not behaved as would be expected of a competitive market free of collusion. Rather, the behavior in this market strongly evidences that Defendants engaged in a significant price-fixing conspiracy that had the purpose and effect of unnaturally stabilizing and raising prices for CRT Products.

73.   After initially being introduced into a market, consumer electronics products and their component parts typically are characterized by steady downward pricing trends. However, since at least 1998, the market for CRT Products has been characterized by unnatural price stability and certain periods of substantial upward pricing trends.

74.   During the Class Period, Defendants accepted the express invitations to collude referred to hereinabove and repeatedly, continuously, jointly, and collusively coordinated and prices of CRT Products in order to raise, fix, and stabilize the market.

75.   Defendants, through their officers, directors and employees, effectuated a contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

    a.   Participating in meetings and conversations to discuss the prices and supply of CRT Products in the United States;

    b.   Agreeing to manipulate the prices and supply of CRT Products sold in the United States in a manner that deprived consumers of free and open competition;

    c.   Issuing price announcements and quotations in accordance with the agreements reached; and

d.    Selling CRT Products to various customers in the United States at fixed, non-competitive prices.

## THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS

76.    Defendants' conspiracy to raise or maintain the price of CRT Products at artificial levels resulted in harm to Plaintiff and the indirect-purchaser consumer class alleged herein because it resulted in their paying higher prices for CRT Products than they would have had no conspiracy occurred. The entire overcharge for CRT Products was passed on to Plaintiff and members of the indirect-purchaser class.

77.    CRTs have no independent utility, and have value only as components of other products, such as TVs, computer monitors, or other electronics products. The demand for CRTs thus directly derives from the demand for CRT Products. The market for CRTs and the market for the products into which they are placed are inextricably linked and intertwined.

78.    When a CRT display leaves a defendant's manufacturing plant, it requires minimal additional labor or materials to make it into a TV or a computer monitor. Thus, the price of products containing CRTs is directly correlated to the price of CRTs. The margins for OEMs are sufficiently thin that price increases of CRTs force OEMs to increase the prices of their products.

79.    TVs and monitors tend to have little or no brand loyalty, such that aggressive pricing causes consumers to switch preferences to different brands. Thus, CRTs are all subject to vigorous price competition.

80.    The demand for CRT Products is ultimately determined by purchasers of products containing such displays. Because OEMs have thin net margins, they must pass on any increase in component costs, such that increases in the price of CRTs lead to quick corresponding price increases at the OEM level for products containing such displays.

81.    As a result, Plaintiff and other indirect purchasers have been forced to pay supra-competitive prices for products containing CRT Products. These inflated prices have been passed on to them by direct purchaser manufacturers, distributors, and retailers. Those overcharges have unjustly enriched Defendants.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this action on her own behalf and as a class action pursuant to

Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following

Class (the "Nationwide Class"):

> All United States citizens and entities residing in the United
> States that, from May 1, 1998 through December 1, 2007,
> purchased in the United States, CRT Products indirectly from
> Defendants for their own use and not for resale.  Specifically
> excluded from this Class are Defendants; the officers, directors
> or employees of any Defendant; any entity in which any
> Defendant has a controlling interest; and any affiliate, legal
> representative, heir or assign of any Defendant.  Also excluded
> are any federal, state or local governmental entities, any judicial
> officer presiding over this action and the members of his/her
> immediate family and judicial staff, and any juror assigned to
> this action

83.     Plaintiff also brings this action on her own behalf and as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s),

on behalf of all members of the following classes (collectively, the "Indirect Purchaser

Classes"):

> a.      **SOUTH DAKOTA:** All persons in South Dakota who indirectly
> purchased CRT Products manufactured and/or sold by one or more of
> Defendants during the Class Period.  Specifically excluded from this
> Class are Defendants; the officers, directors or employees of any
> Defendant; any entity in which any Defendant has a controlling
> interest; and any affiliate, legal representative, heir or assign of any
> Defendant.  Also excluded are any federal, state or local governmental
> entities, any judicial officer presiding over this action and the members
> of his/her immediate family and judicial staff, and any juror assigned to
> this action (the "South Dakota Indirect Purchaser Class").

> b.      **ARIZONA:** All persons in Arizona who indirectly purchased CRT
> Products manufactured and/or sold by one or more of Defendants
> during the Class Period.  Specifically excluded from this Class are
> Defendants; the officers, directors or employees of any Defendant; any
> entity in which any Defendant has a controlling interest; and any
> affiliate, legal representative, heir or assign of any Defendant.  Also
> excluded are any federal, state or local governmental entities, any

judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Arizona Indirect Purchaser Class").

c.    **CALIFORNIA:** All persons in California who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "California Indirect Purchaser Class").

d.    **DISTRICT OF COLUMBIA:** All persons in the District of Columbia who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "District of Columbia Indirect Purchaser Class").

e.    **FLORIDA**: All persons in Florida who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Florida Indirect Purchaser Class").

f.    **IOWA:** All persons in Iowa who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Iowa Indirect Purchaser Class").

g.   **KANSAS:** All persons in Kansas who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Kansas Indirect Purchaser Class").

h.   **MAINE:** All persons in Maine who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Maine Indirect Purchaser Class").

i.   **MASSACHUSETTS:** All persons in Massachusetts who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Massachusetts Indirect Purchaser Class").

j.   **MICHIGAN:** All persons in Michigan who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Michigan Indirect Purchaser Class").

k.   **MINNESOTA:** All persons in Minnesota who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are

Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Minnesota Indirect Purchaser Class").

l.      **NEBRASKA:** All persons in Nebraska who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nebraska Indirect Purchaser Class").

m.      **NEVADA:** All persons in Nevada who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nevada Indirect Purchaser Class").

n.      **NEW MEXICO:** All persons in New Mexico who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New Mexico Indirect Purchaser Class").

o.      **NEW YORK:** All persons in New York who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any

judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New York Indirect Purchaser Class").

p. **NORTH CAROLINA:** All persons in North Carolina who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Carolina Indirect Purchaser Class").

q. **NORTH DAKOTA:** All persons in North Dakota who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Dakota Indirect Purchaser Class").

r. **PUERTO RICO:** All persons in Puerto Rico who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Puerto Rico Indirect Purchaser Class").

s. **TENNESSEE:** All persons in Tennessee who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Tennessee Indirect Purchaser Class").

t.   **VERMONT:** All persons in Vermont who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Vermont Indirect Purchaser Class").

u.   **WEST VIRGINIA:** All persons in West Virginia who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "West Virginia Indirect Purchaser Class").

v.   **WISCONSIN:** All persons in Wisconsin who indirectly purchased CRT Products manufactured and/or sold by one or more of Defendants during the Class Period. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Wisconsin Indirect Purchaser Class").

84.   Plaintiff does not know the exact size of the Indirect Purchaser Class and the Nationwide Class (collectively "Classes") at the present time. However, Plaintiff believes that due to the nature of the trade and commerce involved, there are at least hundreds of thousands of class members, geographically dispersed throughout the United States such that joinder of all class members would be impracticable.

85.   Plaintiff's claims are typical of the claims of their respective Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are

1   coincident with, and not antagonistic to, those of the members of their respective Classes.

2       86.     Plaintiff has retained competent counsel experienced in class action and

3   complex antitrust and consumer protection litigation.

4       87.     Common questions of law and fact exist, including:

5           (a)   Whether Defendants and their Co-Conspirators engaged in a contract,
6                 combination or conspiracy among themselves to fix, raise, maintain or
                  stabilize the process of, or allocate the market of CRT Products sold in
7                 the United States;

8           (b)   The duration and extent of the contract, combination or conspiracy;

9           (c)   Whether Defendants and their Co-Conspirators were participants in the
10                contracts, combinations or conspiracies alleged herein;

11          (d)   Whether Defendants and their Co-Conspirators engaged in conduct that
12                violated Section 1 of the Sherman act;

13          (e)   Whether Defendants and their Co-Conspirators engaged in unlawful,
                  unfair or deceptive contracts, combinations or conspiracies among
14                themselves, express or implied, to fix, raise, maintain, or stabilize
                  prices of CRT Products sold in and/or distributed in the United States;
15

16          (f)   Whether Defendants and their Co-Conspirators engaged in conduct in
                  violation of the antitrust, consumer protection, unfair trade, and/or
17                deceptive trade practices laws of the various Indirect Purchaser States
                  as alleged below;
18

19          (g)   Whether the anticompetitive conduct of Defendants and their Co-
                  Conspirators caused prices of CRT Products to be artificially inflated to
20                non-competitive levels;

21          (h)   Whether Defendants and their Co-Conspirators unjustly enriched
                  themselves as a result of their inequitable conduct at the expense of the
22                members of the Classes;

23          (i)   Whether Defendants and their Co-Conspirators fraudulently concealed
                  the existence of their unlawful conduct;
24

25          (j)   Whether Plaintiff and the Classes are entitled to injunctive relief; and

26          (k)   Whether Plaintiff and other members of the Indirect Purchaser Classes
                  were injured by the conduct of Defendants and, if so, the appropriate
27                measure of damages for each of the Classes.

28      88.     These and other questions of law and fact are common to the Classes and

predominate over any questions affecting only individual class members, including legal and factual issues relating to liability, damages, and restitution.

89.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

> a.    It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;
>
> b.    It would be virtually impossible for all members of the Classes to intervene as parties-plaintiff in this action;
>
> c.    It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;
>
> d.    It is appropriate for treatment on a fluid recovery basis, which obviate any manageability problems; and
>
> e.    It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

90.     The named Plaintiff will fairly and adequately protect the interests of the Indirect Purchaser Classes in that the named Plaintiff has no interests antagonistic to the interests of the other members of the Indirect Purchaser Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust cases to represent themselves and the class.

91.     This case is also appropriate for certification as a class action because Defendants have acted and refused to act on grounds generally applicable to the class, so that final injunctive relief will be appropriate with respect to the class as a whole.

92.     The claims asserted herein are also appropriate for class certification under the laws of the state of South Dakota and of each of the other states under which claims are asserted.

## **VIOLATIONS ALLEGED**

### **First Claim for Relief**
### **(Violation of Section 1 of the Sherman Act)**

1    93.   Plaintiff incorporates and realleges, as though fully set forth herein, each and

2  every allegation set forth in the preceding paragraphs of this Complaint.

3    94.   Beginning at a time currently unknown to Plaintiff, but at least as early as May

4  1, 1998, and continuing through December 1, 2007, Defendants and their Co-Conspirators

5  entered into a continuing agreement, understanding, and conspiracy in restraint of trade

6  artificially to raise, fix, stabilize, and peg prices for CRT Products in the United States, in

7  violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

8    95.   In formulating and carrying out the alleged agreement, understanding, and

9  conspiracy, Defendants and their Co-Conspirators did those things that they combined and

10 conspired to do, including but not limited to the acts, practices, and course of conduct set forth

11 above, and the following, among others:

12        a.   Fixing, raising, stabilizing, and pegging the price of CRT Products; and

13        b.   Allocating among themselves and collusively reducing the production
              of CRT Products.
14

15   96.   The combination and conspiracy alleged herein has had the following effects,

16 among others:

17        a.   Price competition in the sale CRT Products has been restrained,
              suppressed, and/or eliminated in the United States;
18
          b.   Prices for CRT Products sold by Defendants and their Co-Conspirators
19             have been fixed, raised, maintained and stabilized at artificially high,
               non-competitive levels throughout the United States; and
20

21        c.   Those who purchased CRT Products indirectly from Defendants and
              their Co-Conspirators have been deprived of the benefits of free and
22             open competition.

23   97.   Plaintiff and other Nationwide Class members have been injured and will

24 continue to be injured in their businesses and property by paying more for CRT Products

25 purchased indirectly from Defendants and their Co-Conspirators than they would have paid

26 and will pay in the absence of the combination and conspiracy.

27   98.   Plaintiff and the Nationwide Class are entitled to an injunction against

28 Defendants, preventing and restraining the violations alleged herein.

---

CLASS ACTION COMPLAINT                    25

1    //

2    //

### Second Claim for Relief
### (Unjust Enrichment and Disgorgement of Profits)

99.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

100.    Defendants have been unjustly enriched through overpayments by Plaintiff and members of the Indirect Purchaser Classes.

101.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and members of the Indirect Purchaser Classes.

102.    Plaintiff and all members of the Indirect Purchaser Classes seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and class members may seek restitution.

### Third Claim for Relief
### (Violation of State Antitrust and Unfair Competition Laws)

### South Dakota

103.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges:

        a.    Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout South Dakota; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (iii) Plaintiff and members of the South Dakota Indirect Purchaser Class were deprived of free and open competition; and (iv) Plaintiff and members of the South Dakota Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the South Dakota Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiff and all members of the South Dakota Indirect Purchaser Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

### Arizona

104.     Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a.     Defendants' combinations or conspiracies had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Arizona; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (iii) Members of the Arizona Indirect Purchaser Class were deprived of free and open competition; and (iv) Members of the Arizona Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

b.     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce;

c.     As a direct and proximate result of Defendants' unlawful conduct, Members of the Arizona Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d.  By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§ 44-1401, *et seq.* Accordingly, members of the Arizona Indirect Purchaser Class seek all forms of relief available under Arizona Revised Stat. §§ 44-1401, *et seq.*

### California

105.  Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a.  Defendants' contract, combination, trust or conspiracy was entered in, carried out, effectuated and perfected mainly within the State of California, and Defendants' conduct within California injured all members of the Class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of the California Indirect Purchaser Class;

b.  Beginning at a time currently unknown to Plaintiff, but at least as early as January 1, 1996, and continuing thereafter at least up to December 31, 2006, Defendants and their Co-Conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, CRT Products at supra-competitive levels;

c.  The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise,

maintain, and stabilize the prices of, and to allocate markets for, CRT Products;

    d.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: i. Fixing, raising, stabilizing, and pegging the price of CRT Products; and ii. Allocating among themselves the production of CRT Products;

    e.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: i Price competition in the sale of CRT Products has been restrained, suppressed, and/or eliminated in the State of California; ii. Prices for CRT Products sold by Defendants and their Co-Conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and iii. Those who purchased CRT Products indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition;

    f.    As a direct and proximate result of Defendants' unlawful conduct, members of the California Indirect Purchaser Class have been injured in their business and property in that they paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, the California Indirect Purchaser Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**District of Columbia**

106.   Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

      a.    Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (iii) Members of the District of Columbia Indirect Purchaser Class were deprived of free and open competition; and (iv) Members of the District of Columbia Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT;

      b.    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce;

      c.    As a direct and proximate result of Defendants' unlawful conduct, members of the District of Columbia Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

      d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4503, *et seq.*  Accordingly, members of the District of Columbia Indirect Purchaser Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4503, *et seq.*

### Iowa

107.   Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

      a.    Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Iowa; (ii) CRT Product prices were raised, fixed,

1    maintained and stabilized at artificially high levels throughout Iowa;

2    (iii) members of the Iowa Indirect Purchaser Class were deprived of

3    free and open competition; and (iv) members of the Iowa Indirect

4    Purchaser Class paid supra-competitive, artificially inflated prices for

5    CRT Products;

6        b.    During the Class Period, Defendants' illegal conduct substantially

7    affected Iowa commerce;

8        c.    As a direct and proximate result of Defendants' unlawful conduct,

9    members of the Iowa Indirect Purchaser Class have been injured in

10   their business and property and are threatened with further injury;

11       d.    By reason of the foregoing, Defendants have entered into agreements in

12   restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*

13   Accordingly, members of the Iowa Indirect Purchaser Class seek all

14   forms of relief available under Iowa Code §§ 553.1.

15   **Kansas**

16   108.    Plaintiff incorporates and realleges each and every allegation set for in the

17   preceding paragraphs of this Complaint, and further alleges:

18       a.    Defendants' combinations or conspiracies had the following effects:  (i)

19   CRT Product price competition was restrained, suppressed, and

20   eliminated throughout Kansas; (ii) CRT Product prices were raised,

21   fixed, maintained and stabilized at artificially high levels throughout

22   Kansas; iii. members of the Kansas Indirect Purchaser Class were

23   deprived of free and open competition; and iv. members of the Kansas

24   Indirect Purchaser Class paid supra-competitive, artificially inflated

25   prices for CRT Products;

26       b.    During the Class Period, Defendants' illegal conduct substantially

27   affected Kansas commerce;

28

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Kansas Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, the members of the Kansas Indirect Purchaser Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

### Maine

109.    Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a.    Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Maine; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (iii) members of the Maine Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the Maine Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

b.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce;

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Maine Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, members of the Maine Indirect Purchaser Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

### Michigan

110.   Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a.   Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Michigan; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (iii) members of the Michigan Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the Michigan Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

b.   During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce;

c.   As a direct and proximate result of Defendants' unlawful conduct, members of the Michigan Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.773, *et seq.*  Accordingly, members of the Michigan Indirect Purchaser Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.73, *et seq.*

### Minnesota

111.   Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a.   Defendants' combinations or conspiracies had the following effects:  (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Minnesota; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (iii) members of the Minnesota Indirect Purchaser Class

1                      were deprived of free and open competition; and (iv) members of the

2                      Minnesota Indirect Purchaser Class paid supra-competitive, artificially

3                      inflated prices for CRT Products;

4          b.       During the Class Period, Defendants' illegal conduct substantially

5                      affected Minnesota commerce;

6          c.       As a direct and proximate result of Defendants' unlawful conduct,

7                      members of the Minnesota Indirect Purchaser Class have been injured

8                      in their business and property and are threatened with further injury;

9          d.       By reason of the foregoing, Defendants have entered into agreements in

10                      restraint of trade in violation of Minnesota Stat. §§ 325D.52, *et seq.*

11                      Accordingly, members of the Minnesota Indirect Purchaser Class seek

12                      all relief available under Minnesota Stat. §§ 325D.52, *et seq.*

13                                  **Nebraska**

14      112.     Plaintiff incorporates and realleges each and every allegation set for in the

15 preceding paragraphs of this Complaint, and further alleges:

16          a.       Defendants' combinations or conspiracies had the following effects: (i)

17                      CRT Product price competition was restrained, suppressed, and

18                      eliminated throughout Nebraska; (ii) CRT Product prices were raised,

19                      fixed, maintained and stabilized at artificially high levels throughout

20                      Nebraska; (iii) members of the Nebraska Indirect Purchaser Class were

21                      deprived of free and open competition; and (iv) members of the

22                      Nebraska Indirect Purchaser Class paid supra-competitive, artificially

23                      inflated prices for CRT Products;

24          b.       During the Class Period, Defendants' illegal conduct substantially

25                      affected Nebraska commerce;

26          c.       As a direct and proximate result of Defendants' unlawful conduct,

27                      members of the Nebraska Indirect Purchaser Class have been injured in

28                      their business and property and are threatened with further injury;

1    d.    By reason of the foregoing, Defendants have entered into agreements in

2          restraint of trade in violation of Nebraska Rev. Stat. §§ 59-801, *et seq.*

3          Accordingly, all members of the Nebraska Indirect Purchaser Class

4          seek all relief available under Nebraska Rev. Stat. §§ 59-801, *et seq.*

5    //

6                                          **Nevada**

7    113.   Plaintiff incorporates and realleges each and every allegation set for in the

8    preceding paragraphs of this Complaint, and further alleges:

9    a.    Defendants' combinations or conspiracies had the following effects:  (i)

10         CRT Product price competition was restrained, suppressed, and

11         eliminated throughout Nevada; (ii) CRT Product prices were raised,

12         fixed, maintained and stabilized at artificially high levels throughout

13         Nevada; (iii) members of the Nevada Indirect Purchaser Class were

14         deprived of free and open competition; and (iv) members of the Nevada

15         Indirect Purchaser Class paid supra-competitive, artificially inflated

16         prices for CRT Products;

17   b.    During the Class Period, Defendants' illegal conduct substantially

18         affected Nevada commerce;

19   c.    As a direct and proximate result of Defendants' unlawful conduct,

20         members of the Nevada Indirect Purchaser Class have been injured in

21         their business and property and are threatened with further injury;

22   d.    By reason of the foregoing, Defendants have entered into agreements in

23         restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et*

24         *seq.*  Accordingly, all members of the Nevada Indirect Purchaser Class

25         seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

26                                       **New Mexico**

27   114.   Plaintiff incorporates and realleges each and every allegation set for in the

28   preceding paragraphs of this Complaint, and further alleges:

a. Defendants' combinations or conspiracies had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout New Mexico; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (iii) members of the New Mexico Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the New Mexico Indirect Purchaser Class paid supracompetitive, artificially inflated prices for CRT Products;

b. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce;

c. As a direct and proximate result of Defendants' unlawful conduct, members of the New Mexico Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, members of the New Mexico Indirect Purchaser Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

## North Carolina

115. Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

a. Defendants' combinations or conspiracies had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout North Carolina; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (iii) members of the North Carolina Indirect Purchaser Class were deprived of free and open competition; and (iv)

1    members of the North Carolina Indirect Purchaser Class paid supra-

2    competitive, artificially inflated prices for CRT Products;

3         b.    During the Class Period, Defendants' illegal conduct substantially

4               affected North Carolina commerce;

5         c.    As a direct and proximate result of Defendants' unlawful conduct,

6               members of the North Carolina Indirect Purchaser Class have been

7               injured in their business and property and are threatened with further

8               injury;

9         d.    By reason of the foregoing, Defendants have entered into agreements in

10              restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et*

11              *seq.* Accordingly, members of the North Carolina Indirect Purchaser

12              Class seek all relief available under North Carolina Gen. Stat. §§ 75-1,

13              *et. seq.*

### North Dakota

15   116.   Plaintiff incorporates and realleges each and every allegation set for in the

16   preceding paragraphs of this Complaint, and further alleges:

17        a.    Defendants' combinations or conspiracies had the following effects:  (i)

18              CRT Product price competition was restrained, suppressed, and

19              eliminated throughout North Dakota; (ii) CRT Product prices were

20              raised, fixed, maintained and stabilized at artificially high levels

21              throughout North Dakota; (iii) members of the North Dakota Indirect

22              Purchaser Class were deprived of free and open competition; and (iv)

23              members of the North Dakota Indirect Purchaser Class paid supra-

24              competitive, artificially inflated prices for CRT Products;

25        b.    During the Class Period, Defendants' illegal conduct had a substantial

26              effect on North Dakota commerce;

27        c.    As a direct and proximate result of Defendants' unlawful conduct,

28              members of the North Dakota Indirect Purchaser Class have been

1    injured in their business and property and are threatened with further

2    injury;

3    d.    By reason of the foregoing, Defendants have entered into agreements in

4    restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-

5    01, *et seq.* Accordingly, members of the North Dakota Indirect

6    Purchaser Class seek all relief available under North Dakota Cent.

7    Code §§ 51-08.1-01, *et seq.*

8    **Puerto Rico**

9    117.    Plaintiff incorporates and realleges each and every allegation set for in the

10   preceding paragraphs of this Complaint, and further alleges:

11   a.    Defendants' combinations or conspiracies had the following effects: (i)

12   CRT Product price competition was restrained, suppressed, and

13   eliminated throughout Puerto Rico; (ii) CRT Product prices were

14   raised, fixed, maintained and stabilized at artificially high levels

15   throughout Puerto Rico; (iii) members of the Puerto Rico Indirect

16   Purchaser Class were deprived of free and open competition; and (iv)

17   members of the Puerto Rico Indirect Purchaser Class paid

18   supracompetitive, artificially inflated prices for CRT Products;

19   b.    During the Class Period, Defendants' illegal conduct had a substantial

20   effect on Puerto Rico commerce;

21   c.    As a direct and proximate result of Defendants' unlawful conduct,

22   members of the Puerto Rico Indirect Purchaser Class have been injured

23   in their business and property and are threatened with further injury;

24   d.    By reason of the foregoing, Defendants have entered into agreements in

25   restraint of trade in violation of Puerto Rico 10 LPRA §§ 257, *et seq.*

26   and 32 LPRA §§ 5141. Accordingly, members of the Puerto Rico

27   Indirect Purchaser Class seek all relief available under Puerto Rico law.

28   **Tennessee**

118. Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

    a. Defendants' combinations or conspiracies had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Tennessee; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (iii) members of the Tennessee Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the Tennessee Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as CRT Products were sold in Tennessee.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Tennessee Indirect Purchaser Class have been injured in their business and property and are threatened with further injury;

    d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, members of the Tennessee Indirect Purchaser Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

## Vermont

119. Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

    a. Defendants' combinations or conspiracies had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout Vermont; (ii) CRT Product prices were raised, fixed, maintained and stabilized at artificially high levels throughout

1                    Vermont; (iii) members of the Vermont Indirect Purchaser Class were

2                    deprived of free and open competition; and (iv) members of the

3                    Vermont Indirect Purchaser Class paid supra-competitive, artificially

4                    inflated prices for CRT Products;

5         b.     During the Class Period, Defendants' illegal conduct had a substantial

6                    effect on Vermont commerce;

7         c.     As a direct and proximate result of Defendants' unlawful conduct,

8                    members of the Vermont Indirect Purchaser Class have been injured in

9                    their business and property and are threatened with further injury;

10        d.     By reason of the foregoing, Defendants have entered into agreements in

11                 restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*

12                 Accordingly, members of the Vermont Indirect Purchaser Class seek all

13                 relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

14                         **West Virginia**

15    120.    Plaintiff incorporates and realleges each and every allegation set for in the

16  preceding paragraphs of this Complaint, and further alleges:

17         a.     Defendants' combinations or conspiracies had the following effects:  (i)

18                    CRT Product price competition was restrained, suppressed, and

19                    eliminated throughout West Virginia; (ii) CRT Product prices were

20                    raised, fixed, maintained and stabilized at artificially high levels

21                    throughout West Virginia; (iii) members of the West Virginia Indirect

22                    Purchaser Class were deprived of free and open competition; and (iv)

23                    members of the West Virginia Indirect Purchaser Class paid supra-

24                    competitive, artificially inflated prices for CRT Products;

25         b.     During the Class Period, Defendants' illegal conduct had a substantial

26                    effect on West Virginia commerce;

27         c.     As a direct and proximate result of Defendants' unlawful conduct,

28                    members of the West Virginia Indirect Purchaser Class have been

1      injured in their business and property and are threatened with further

2      injury;

3      d.    By reason of the foregoing, Defendants have entered into agreements in

4      restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.*

5      Accordingly, members of the West Virginia Indirect Purchaser Class

6      seek all relief available under West Virginia §§ 47-18-1, *et seq.*

7                  **Wisconsin**

8    121.   Plaintiff incorporates and realleges each and every allegation set for in the

9 preceding paragraphs of this Complaint, and further alleges:

10      a.    Defendants' combinations or conspiracies had the following effects:  (i)

11      CRT Product price competition was restrained, suppressed, and

12      eliminated throughout Wisconsin; (ii) CRT Product prices were raised,

13      fixed, maintained and stabilized at artificially high levels throughout

14      Wisconsin; (iii) members of the Wisconsin Indirect Purchaser Class

15      were deprived of free and open competition; and (iv) members of the

16      Wisconsin Indirect Purchaser Class paid supra-competitive, artificially

17      inflated prices for CRT Products;

18      b.    During the Class Period, Defendants' illegal conduct had a substantial

19      effect on Wisconsin commerce;

20      c.    As a direct and proximate result of Defendants' unlawful conduct,

21      members of the Wisconsin Indirect Purchaser Class have been injured

22      in their business and property and are threatened with further injury;

23      d.    By reason of the foregoing, Defendants have entered into agreements in

24      restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.*

25      Accordingly, members of the Wisconsin Indirect Purchaser Class seek

26      all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

27              **Fourth Claim for Relief**
        **(Violation of State Consumer Protection and Unfair Competition Laws)**

28

122. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

123. Defendants engaged in unfair competition and/or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

### California

124. Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

    a.    Defendants' business acts and practices were centered in, carried out, effectuated, and perfected mainly within the State of California, and Defendants' conduct injured all members of the California Indirect Purchaser Class. Therefore, this claim for relief under California law is brought on behalf of the California Indirect Purchaser Class;

    b.    Beginning on a date unknown to Plaintiff, but at least as early as May 1, 1998, and continuing thereafter through December 1, 2007, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above;

    c.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law;

    d.    Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair,

1    unlawful, and/or fraudulent business acts or practices within the

2    meaning of California Business and Professions Code, Section 17200,

3    *et seq.*, including, but not limited to, the following: (i) The violations of

4    Section 1 of the Sherman Act, as set forth above; (ii) The violations of

5    Section 16720, *et seq.*, of the California Business and Professions

6    Code, set forth above;

7    e.   Defendants' acts, omissions, misrepresentations, practices, an non-

8         disclosures, as described above, whether or not in violation of Section

9         16720, *et seq.*, of the California Business and Professions Code, and

10        whether or not concerted or independent acts, are otherwise unfair,

11        unconscionable, unlawful or fraudulent;

12   f.   Defendants' acts or practices are unfair to consumers of CRT Products

13        in the State of California within the meaning of Section 17200,

14        California Business and Professions Code; and

15   g.   Defendants' acts and practices are fraudulent or deceptive within the

16        meaning of Section 17200 of the California Business and professions

17        Code;

18   h.   California Indirect Purchaser Class members are entitled to full

19        restitution and/or disgorgement of all revenues, earnings, profits,

20        compensation, and benefits that may have been obtained by Defendants

21        as a result of such business acts or practices;

22   i.   The illegal conduct alleged herein is continuing and there is no

23        indication that Defendants will not continue such activity into the

24        future;

25   j.   The unlawful and unfair business practices of Defendants, as described

26        above, have caused and continue to cause members of the California

27        Class to pay supra-competitive and artificially-inflated prices for CRT

28        Products.  Members of the California Indirect Purchaser Class suffered

1    injury in fact and lost money or property as a result of such unfair

2    competition;

3        k.    The conduct of Defendants as alleged in this Complaint violates

4              Section 17200 of the California Business and Professions Code;

5        l.    As alleged in this Complaint, Defendants and their Co-Conspirators

6              have been unjustly enriched as a result of their wrongful conduct and

7              by Defendants' unfair competition.  Members of the California Indirect

8              Purchaser Class are accordingly entitled to equitable relief including

9              restitution and/or disgorgement of all revenues, earnings, profits,

10             compensation, and benefits that may have been obtained by Defendants

11             as a result of such business practices, pursuant to the California

12             Business and Professions Code, Sections 17203 and 17204.

13                            **District of Columbia**

14   125.   Plaintiff incorporates and realleges each and every allegation set for in the

15   preceding paragraphs of this Complaint, and further alleges:

16       a.    Defendants agreed to, and did in fact, act in restraint of trade or

17             commerce by affecting, fixing, controlling and/or maintaining, at

18             artificial and/or non-competitive levels, the prices at which CRT

19             Products were sold, distributed or obtained in the District of Columbia;

20       b.    The foregoing conduct constitutes "unlawful trade practices," within

21             the meaning of D.C. Code § 28-3904;

22       c.    Defendants' unlawful conduct had the following effects: i. CRT

23             Product price competition was restrained, suppressed, and eliminated

24             throughout the District of Columbia; ii. CRT Product prices were

25             raised, fixed, maintained, and stabilized at artificially high levels

26             throughout the District of Columbia; iii. members of the District of

27             Columbia Indirect Purchaser Class were deprived of free and open

28             competition; and iv. members of the District of Columbia Indirect

1    Purchaser Class paid supra-competitive, artificially inflated prices for

2    CRT Products;

3        d.    As a direct and proximate result of Defendants' conduct, members of

4    the District of Columbia Indirect Purchaser Class have been injured and

5    are threatened with further injury.  Defendants have engaged in unfair

6    competition or unfair or deceptive acts or practices in violation of

7    District of Columbia Code § 28-3901, *et seq.*, and, accordingly,

8    members of the District of Columbia Indirect Purchaser Class seek all

9    relief available under that statute.

10   **Florida**

11       126.   Plaintiff incorporates and realleges each and every allegation set for in the

12   preceding paragraphs of this Complaint, and further alleges:

13       a.    Defendants' unlawful conduct had the following effects: (i) CRT

14   Product price competition was restrained, suppressed, and eliminated

15   throughout Florida; (ii) CRT Product prices were raised, fixed,

16   maintained, and stabilized at artificially high levels throughout Florida;

17   (iii) members of the Florida Indirect Purchaser Class were deprived of

18   free and open competition; and (iv) members of the Florida Indirect

19   Purchaser Class paid supra-competitive, artificially inflated prices for

20   CRT Products;

21       b.    During the Class Period, Defendants' illegal conduct substantially

22   affected Florida commerce and consumers;

23       c.    As a direct and proximate result of Defendants' unlawful conduct,

24   members of the Florida Indirect Purchaser Class have been injured and

25   are threatened with further injury;

26       d.    Defendants have engaged in unfair competition or unfair or deceptive

27   acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and,

28

1  accordingly, members of the Florida Indirect Purchaser Class seek all

2  relief available under that statute.

3         **Kansas**

4  127. Plaintiff incorporates and realleges each and every allegation set for in the

5 preceding paragraphs of this Complaint, and further alleges:

6    a. The conduct of Defendants described herein constitutes consumer-

7     oriented deceptive acts or practices within the meaning of Kansas law,

8     which resulted in consumer injury and broad adverse impact on the

9     public at large, and harmed the public interest of Kansas in an honest

10     marketplace in which economic activity is conducted in a competitive

11     manner;

12    b. Defendants' unlawful conduct had the following effects:  (i) CRT

13     Product price competition was restrained, suppressed, and eliminated

14     throughout Kansas; (ii) CRT Product prices were raised, fixed,

15     maintained, and stabilized at artificially high levels throughout Kansas;

16     (iii) members of the Kansas Indirect Purchaser Class were deprived of

17     free and open competition; and (iv) members of the Kansas Indirect

18     Purchaser Class paid supra-competitive, artificially inflated prices for

19     CRT Products;

20    c. During the Class Period, Defendants' illegal conduct substantially

21     affected Kansas commerce and consumers;

22    d. During the Class Period, each of Defendants named herein, directly, or

23     indirectly and through affiliates they dominated and controlled,

24     manufactured, sold and/or distributed CRT Products in Kansas;

25    e. Members of the Kansas Indirect Purchaser Class seek actual damages

26     for their injuries caused by these violations in an amount to be

27     determined at trial and are threatened with further injury.  Defendants

28     have engaged in unfair competition or unfair or deceptive acts or

1    practices in violation of Kansas Stat. § 50-623, *et seq.*, and,

2    accordingly, members of the Kansas Indirect Purchaser Class seek all

3    relief available under that statute.

4    **Maine**

5    128.    Plaintiff incorporates and realleges each and every allegation set for in the

6    preceding paragraphs of this Complaint, and further alleges:

7    a.    Members of the Maine Indirect Purchaser Class purchased in the State

8    of Maine and paid out-of-pocket for CRT Products, primarily for

9    personal use;

10    b.    Defendants agreed to, and did in fact, act in restraint of trade by

11    affecting, fixing, controlling and/or maintaining at artificial and non-

12    competitive levels, the prices at which CRT Products were sold,

13    distributed and/or obtained in Maine and took efforts to conceal their

14    agreements from members of the Maine Indirect Purchaser Class;

15    c.    Defendants' unlawful conduct had the following effects: (i) CRT

16    Product price competition was restrained, suppressed, and eliminated

17    throughout Maine; (ii) CRT Product prices were raised, fixed,

18    maintained, and stabilized at artificially high levels throughout Maine;

19    (iii) Members of the Maine Indirect Purchaser Class were deprived of

20    free and open competition; and (iv) Members of the Maine Indirect

21    Purchaser Class paid artificially inflated prices for CRT Products;

22    d.    During the Class Period, Defendants' illegal conduct substantially

23    affected Maine commerce;

24    e.    As a direct and proximate result of Defendants' unlawful conduct,

25    Members of the Maine Indirect Purchaser Class have been injured and

26    are threatened with further injury. Defendants have engaged in unfair

27    competition or unfair or deceptive acts or practices in violation of 5

28    Maine Rev. Stat. § 207, *et seq.*, and, accordingly, members of the

1   Maine Indirect Purchaser Class seek all relief available under that

2   statute.

3   //

4   **Massachusetts**

5   129.   Plaintiff incorporates and realleges each and every allegation set for in the

6   preceding paragraphs of this Complaint, and further alleges:

7   a.   Defendants were engaged in trade or commerce as defined by G.L. c.

8   93A;

9   b.   Defendants agreed to, and did in fact, act in restraint of trade or

10   commerce in a market which includes Massachusetts, by affecting,

11   fixing, controlling and/or maintaining at artificial and non-competitive

12   levels, the prices at which CRT Products were sold, distributed, and/or

13   obtained in Massachusetts and took efforts to conceal their agreements

14   from the members of the Massachusetts Indirect Purchaser Class;

15   c.   Defendants' unlawful conduct had the following effects: (i) CRT

16   Product price competition was restrained, suppressed, and eliminated

17   throughout Massachusetts; (ii) CRT Product prices were raised, fixed,

18   maintained, and stabilized at artificially high levels throughout

19   Massachusetts; (iii) members of the Massachusetts Indirect Purchaser

20   Class were deprived of free and open competition; and (iv) members of

21   the Massachusetts Indirect Purchaser Class paid supra-competitive,

22   artificially inflated prices for CRT Products;

23   d.   As a direct and proximate result of Defendants' unlawful conduct,

24   members of the Massachusetts Indirect Purchaser Class were injured

25   and are threatened with further injury;

26   e.   Each of Defendants has been served with a demand letter in accordance

27   with G.L. c. 93A, § 9, or such service of a demand letter was

28   unnecessary due to the Defendant not maintaining a place of business

CLASS ACTION COMPLAINT                           48

1    within the Commonwealth of Massachusetts or not keeping assets

2    within the Commonwealth. More than thirty days has passed since such

3    demand letters were served, and each Defendant served has failed to

4    make a reasonable settlement offer;

5        f.    By reason of the foregoing, Defendants engaged in unfair competition

6    and unfair or deceptive acts or practices, in violation of G.L. c. 93A,

7    §2. Defendants' and their co-conspirators' violations of Chapter 93A

8    were knowing or willful, entitling the members of the Massachusetts

9    Indirect Purchaser Class to multiple damages.

10   **Nebraska**

11   130.   Plaintiff incorporates and realleges each and every allegation set for in the

12   preceding paragraphs of this Complaint, and further alleges:

13       a.    Defendants agreed to, and did in fact, act in restraint of trade or

14   commerce in a market which includes Nebraska, by affecting, fixing,

15   controlling and/or maintaining at artificial and non-competitive levels,

16   the prices at which CRT Products were sold, distributed, and/or

17   obtained in Nebraska and took efforts to conceal their agreements from

18   members of the Nebraska Indirect Purchaser Class;

19       b.    The foregoing conduct constitutes unfair methods of competition and

20   unfair or deceptive acts or practices, including engaging in a contract,

21   combination, trust or conspiracy in restraint of trade or commerce

22   within the meaning of Neb. Rev. Stat. secs. 59-1602, et seq.

23       c.    Defendants' unlawful conduct had the following effects: (i) CRT

24   Product price competition was restrained, suppressed, and eliminated

25   throughout Nebraska; (ii) CRT Product prices were raised, fixed,

26   maintained, and stabilized at artificially high levels throughout

27   Nebraska; (iii) members of the Nebraska Indirect Purchaser Class were

28   deprived of free, fair and honest competition; and (iv) members of the

1    Nebraska Indirect Purchaser Class paid supra-competitive, artificially

2    inflated prices for CRT Products;

3        d.    As a direct and proximate result of Defendants' unlawful conduct,

4              members of the Nebraska Indirect Purchaser Class were injured and are

5              threatened with further injury;

6        e.    Defendants have engaged in unfair methods of competition and unfair

7              or deceptive acts or practices, including engaging in a contract,

8              combination, trust or conspiracy in restraint of trade or commerce,

9              and including attempts to and/or actually combining and conspiring

10             with other Defendants to monopolize trade or commerce in violation of

11             Neb. Rev. Stat. secs. 59-1602, et seq. Accordingly, all members of the

12             Nebraska Indirect Purchaser Class seek actual damages, costs of

13             suit, reasonable attorney's fees, and any other damages the court may

14             deem proper pursuant to Neb. Rev. Stat. sec. 59-1609.

15                                   **New Mexico**

16       131.   Plaintiff incorporates and realleges each and every allegation set for in the

17   preceding paragraphs of this Complaint, and further alleges:

18       a.    Defendants agreed to, and did in fact, act in restraint of trade or

19             commerce by affecting, fixing, controlling and/or maintaining at non-

20             competitive and artificially inflated levels, the prices at which CRT

21             Products were sold, distributed and/or obtained in New Mexico and

22             took efforts to conceal their agreements from members of the New

23             Mexico Indirect Purchaser Class;

24       b.    The aforementioned conduct on the part of Defendants constituted

25             "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-

26             12-3, in that such conduct, *inter alia*, resulted in a gross disparity

27             between the value received by members of the New Mexico Indirect

28

1    Purchaser Class and the prices paid by them for CRT Products as set

2    forth in N.M.S.A., § 57-12-2E;

3    c.    Defendants' unlawful conduct had the following effects: (i) CRT

4    Product price competition was restrained, suppressed, and eliminated

5    throughout New Mexico; (ii) CRT Product prices were raised, fixed,

6    maintained, and stabilized at artificially high levels throughout New

7    Mexico; (iii) members of the New Mexico Indirect Purchaser Class

8    were deprived of free and open competition; and (iv) members of the

9    New Mexico Indirect Purchaser Class paid supra-competitive,

10    artificially inflated prices for CRT Products;

11    d.    During the Class Period, Defendants' illegal conduct substantially

12    affected New Mexico commerce and consumers;

13    e.    As a direct and proximate result of the unlawful conduct of Defendants,

14    members of the New Mexico Indirect Purchaser Class have been

15    injured and are threatened with further injury;

16    f.    Defendants have engaged in unfair competition or unfair or deceptive

17    acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,*

18    and, accordingly, members of the New Mexico Indirect Purchaser Class

19    seek all relief available under that statute.

20                                **New York**

21    132.    Plaintiff incorporates and realleges each and every allegation set for in the

22    preceding paragraphs of this Complaint, and further alleges:

23    a.    Defendants agree to, and did in fact, act in restraint of trade or

24    commerce by affecting, fixing, controlling and/or maintaining, at

25    artificial and non-competitive levels, the prices at which CRT Products

26    were sold, distributed and/or obtained in New York and took efforts to

27    conceal their agreements from the New York Indirect Purchaser Class;

28

CLASS ACTION COMPLAINT                          51

b.   The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner;

c.   Defendants' unlawful conduct had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout New York; (ii) CRT Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (iii) members of the New York Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the New York Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

d.   During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers;

e.   During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed CRT Products in New York;

f.   Members of the New York Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, members of the New York Indirect Purchaser Class do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349 (h).

**North Carolina**

133.   Plaintiff incorporates and realleges each and every allegation set for in the preceding paragraphs of this Complaint, and further alleges:

    a.   Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which CRT Products were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from the North Carolina Indirect Purchaser Class;

    b.   The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner;

    c.   Defendants' unlawful conduct had the following effects: (i) CRT Product price competition was restrained, suppressed, and eliminated throughout North Carolina; (ii) CRT Product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (iii) members of the North Carolina Indirect Purchaser Class were deprived of free and open competition; and (iv) members of the North Carolina Indirect Purchaser Class paid supra-competitive, artificially inflated prices for CRT Products;

    d.   During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers;

    e.   During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed CRT Products in North Carolina;

1          f.      Members of the North Carolina Indirect Purchaser Class seek actual

2                  damages for their injuries caused by these violations in an amount to be

3                  determined at trial and are threatened with further injury. Defendants

4                  have engaged in unfair competition or unfair or deceptive acts or

5                  practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.,* and,

6                  accordingly, members of the North Carolina Indirect Purchaser Class

7                  seek all relief available under that statute.

8                                      **Vermont**

9      134.    Plaintiff incorporates and realleges each and every allegation set for in the

10  preceding paragraphs of this Complaint, and further alleges:

11          a.      Defendants agreed to, and did in fact, act in restraint of trade or

12                  commerce in a market that includes Vermont, by affecting, fixing,

13                  controlling, and/or maintaining, at artificial and non-competitive levels,

14                  the prices at which CRT Products were sold, distributed, or obtained in

15                  Vermont;

16          b.      Defendants deliberately failed to disclose material facts to the members

17                  of the Vermont Indirect Purchaser Class concerning Defendants'

18                  unlawful activities and artificially inflated prices for CRT Products.

19                  Defendants owed a duty to disclose such facts, and considering the

20                  relative lack of sophistication of the average, non-business consumer,

21                  Defendants breached that duty by their silence. Defendants

22                  misrepresented to all consumers during the Class Period that

23                  Defendants' CRT Product prices were competitive and fair;

24          c.      Defendants' unlawful conduct had the following effects: (i) CRT

25                  Product price competition was restrained, suppressed, and eliminated

26                  throughout Vermont; (ii) CRT Product prices were raised, fixed,

27                  maintained, and stabilized at artificially high levels throughout

28                  Vermont; (iii) members of the Vermont Indirect Purchaser Class were

1    deprived of free and open competition; and (iv) members of the

2    Vermont Indirect Purchaser Class paid supra-competitive, artificially

3    inflated prices for CRT Products;

4        d.    As a direct and proximate result of Defendants' violations of law,

5    members of the Vermont Indirect Purchaser Class suffered an

6    ascertainable loss of money or property as a result of Defendants' use

7    or employment of unconscionable and deceptive commercial practices

8    as set forth above. That loss was caused by Defendants' willful and

9    deceptive conduct, as described herein;

10        e.    Defendants' deception, including its affirmative misrepresentations and

11    omissions concerning the price of CRT Products, likely misled all

12    consumers acting reasonably under the circumstances to believe that

13    they were purchasing CRT Products at prices born by a free and fair

14    market. Defendants' misleading conduct and unconscionable activities

15    constitutes unfair competition or unfair or deceptive acts or practices in

16    violation of 9 Vermont § 2451, *et seq.,* and, accordingly, all members

17    of the Vermont Indirect Purchaser Class seek all relief available under

18    that statute.

19    **West Virginia**

20    135.    Plaintiff incorporates and realleges each and every allegation set for in the

21    preceding paragraphs of this Complaint, and further alleges:

22        a.    Defendants agreed to, and did in fact, act in restraint of trade or

23    commerce in a market that includes West Virginia, by affecting, fixing,

24    controlling, and/or maintaining, at artificial and non-competitive levels,

25    the prices at which CRT Products were sold, distributed, and/or

26    obtained in West Virginia;

27        b.    Defendants deliberately failed to disclose and concealed material facts

28    to the members of the West Virginia Indirect Purchaser Class

1    concerning Defendants' unlawful activities and artificially inflated

2    prices for CRT Products. Defendants owed a duty to disclose such

3    facts, and considering the relative lack of sophistication of the average,

4    non-business consumer, Defendants breached that duty by their silence;

5    c.    Defendants' unlawful conduct had the following effects: (i) CRT

6    Product price competition was restrained, suppressed, and eliminated

7    throughout West Virginia; (ii) CRT Product prices were raised, fixed,

8    maintained, and stabilized at artificially high levels throughout West

9    Virginia; (iii) members of the West Virginia Indirect Purchaser Class

10   were deprived of free and open competition; and (iv) members of the

11   West Virginia Indirect Purchaser Class paid supra-competitive,

12   artificially inflated prices for CRT Products;

13   d.    As a direct and proximate result of Defendants' violations of law,

14   members of the West Virginal Indirect Purchaser Class suffered an

15   ascertainable loss of money or property as a result of Defendants' use

16   or employment of unconscionable and deceptive commercial practices

17   as set forth above. That loss was caused by Defendants' willful and

18   deceptive conduct, as described herein.

19   e.    Defendants' deception, including its affirmative misrepresentations and

20   omissions concerning the price of CRT Products, likely misled all

21   consumers acting reasonably under the circumstances to believe that

22   they were purchasing CRT Products at prices born by a free and fair

23   market.  Thus, Defendants have engaged in unfair competition or unfair

24   or deceptive acts or practices in violation of West Virginia Code

25   § 46A-6-101, *et seq.,* and, accordingly, all members of the West

26   Virginia Indirect Purchaser Class seek all relief available under that

27   statute.

28

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A.     That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

B.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

         1.     A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

         2.     An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Second and Fourth Claims for Relief herein;

         3.     Violations of the state consumer protection and unfair competition laws identified in the Third and Fifth Claims for Relief  herein; and

         4.     Acts of unjust enrichment as set forth in the Sixth Claim for Relief herein.

C.     That Plaintiff and the class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged

1  herein, or from entering into any other contract, conspiracy or combination having a similar
2  purpose or effect, and from adopting or following any practice, plan, program, or device
3  having a similar purpose or effect;

4    E.    That Plaintiff and members of the Class be awarded restitution,
5  including disgorgement of profits obtained by Defendants as a result of their acts of unfair
6  competition and acts of unjust enrichment;

7    F.    That Plaintiff and members of the Class be awarded pre- and post-
8  judgment interest as provided by law, and that such interest be awarded at the highest legal
9  rate from and after the date of service of the initial complaint in this action;

10    G.    That Plaintiff and members of the Class recover their cost of suit,
11  including a reasonable attorney's fee, as provided by law; and

12    H.    That Plaintiff and members of the Class have such other, further, and
13  different relief as the case may require and the Court may deem just and proper under the
14  circumstances.

15                        **JURY TRIAL DEMAND**

16    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a
17  trial by jury for all issues so triable.

18  Dated:  March 10, 2008

19                        Daniel E. Birkhaeuser (Ca Bar No. 136646)
20                        BRAMSON, PLUTZIK, MAHLER &
                          BIRKHAEUSER, LLP
21                        2125 Oak Grove Road
                          Suite 120
22                        Walnut Creek, CA 94598
                          Telephone: (925) 945-0200
23                        Facsimile: (925) 945-8792
                          dbirkhaeuser@bramsonplutzik.com
24

25

26

27

28

David Boies
Timothy Battin
Christopher Le
STRAUS & BOIES, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone:      (703) 764-8700
Facsimile:      (703) 764-8704
dboies@straus-boies.com
tbattin@straus-boies.com
cle@straus-boies.com

Eric J. Pickar
BANGS, McCULLEN, BUTLER, FOYE &
SIMMONS, LLP
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone:      (605) 343-1040
epickar@bangsmccullen.com

David Freedman
FREEDMAN, BOYD, HOLLANDER,
GOLDBERG & IVES, PA
20 First Plaza, Suite 700
Albuquerque, NM  87102
Telephone:      (505) 842-9960
Facsimile:      (505) 842-0761
DAF@FBDLAW.com

Jeffrey Bartos
GUERRIERI, EDMOND, CLAYMAN &
BARTOS PC
1625 Massachusetts Ave, NW
Suite 700
Washington, DC  20036
Telephone:      (202) 624-7400
Facsimile:      (202) 624-7420
jbartos@geclaw.com

Frank Balint
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone:      (602) 274-1100
Facsimile:      (602) 274-1199
fbalint@BFFB.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael G. Simon
FRANKOVITCH ANETAKIS COLANTONIO
& SIMON
337 Penco Road
Weirton, WV  26062
Telephone:     (304) 723-4400
Facsimile:      (304) 723-5892
msimon@facslaw.com

James F. Wyatt, III
WYATT & BLAKE, LLP
435 East Morehead Street
Charlotte, NC  28202-2609
Telephone:     (704) 331-0767
Facsimile:      (704) 331-0773
jwyatt@wyattlaw.net